ROLAND L. BELSOME, Judge.
|, The Defendant, Ricky Powell, 'is appealing his convictions for illegal use of a weapon, possession of a firearm by a convicted felon, and obstruction of justice, arguing that the State failed to prove beyond a reasonable doubt that he was guilty of these charges.
On December 11, 2013, Defendant, Ricky Powell, was charged by bill of information with one count of discharging a firearm while in commission of a crime of violence, in violation of La. R.S. 14:94(F); one count of simply battery, in violation of La. R.S. 14:35; one count of possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1; and one count of obstruction of justice, in violation'of La. R.S. 14:130.1.
Defendant pled not guilty at his arraignment, and subsequently filed a motion to suppress and a motion for preliminary hearing. Thereafter, the trial court denied the motion to suppress and found probable cause to substantiate the charges of simple battery, possession of a firearm by a convicted felon, and the lesser offense of illegal use of a weapon in violation of La. R.S. 14:94(A). On August 4, |22014, the matter proceeded to jury trial and the jury returned a verdict of guilty as to possession of firearm by a convicted felon, obstruction of justice, and the lesser offense of illegal use of a weapon. Additionally, the judge found the defendant guilty on the count of simple battery.
Ultimately, the trial court sentenced the defendant to two years and a fine of $1000 .for illegal use of a firearm; six months for simple battery; ten years at hard labor (without probation, parole, or suspension of sentence) and a $1000 fine for possession of a firearm by a convicted felon; and ten years at hard labor for obstruction of justice. All sentences imposed were to run concurrently -and the defendant was given’ credit for time served. The State filed a multiple,offender bill, charging defendant as a second felony offender based on a conviction for obstruction of justice and aggravated battery back in 2010. The defendant pled guilty as a multiple offender, and the trial court vacated the defendant’s sentence for obstruction of justice and imposed a ten year sentence at hard labor as a second felony offender. . The defendant’s appeal followed.

STATEMENT OF FACTS

On October 11,2013, a call came into 911 reporting a shooting near a beauty shop on Hamilton Street in New Orleans, Louisiana. The caller reported that roughly six shots had been fired. Sergeant Robert Hamilton, of the New Orleans Police Department (“NOPD”), responded to" a call from dispatch concerning the shooting. Upon arrival; Sgt. Hamilton observed a man sitting on the steps of a residence on Fig Street, which sat almost directly across the street |afrom the beauty shop on Hamilton Street. The officer spoke with two men at a residence next door to the beauty shop, later identified as victims Cedric Pollard and Tyron Lewis, and was advised that the individual on the porch of the Fig Street home had fired shots at them. Sgt. Hamilton proceeded to identify the individual , at the Fig Street address as one, Ricky Powell, the defendant in this case.
Sgt. Hamilton initially questioned the defendant at the scene. The defendant admitted that he, Pollard, and Lewis had been, involved in a confrontation, but he denied firing a gun, instead alleging that he had fired a paintball gun during said dispute.[1] The defendant then showed Sgt. *724 Hamilton a.paintball gun that was resting against the wall of his bedroom, and the officer took possession of the paintball gun.
Sgfc. Hamilton and two other NOPD officers canvassed the immediate area surrounding defendant’s residence and were unable to locate an actual firearm. Further,' none of the officers found spent bullets or observed any bullet holes/strike marks on the scene. However, three spent shell casings were recovered within feet of the defendant’s property. Eventually, the NOPD obtained a search warrant for the defendant’s residence, .on Fig Street, and Detective Jerry Devorak performed a search of the residence four to five hours after the Sgt. Hamilton’s initial response. Det. Devorak was unable to locate an actual firearm.

J¿ASSIGNMENT OF ERROR

. By his sole assignment of error, defendant asserts that there was insufficient evidence to convict, him of illegal use of a firearm, possession of a firearm by a convicted felon, and obstruction of justice.

DISCUSSION

This court in State v. Haynes, 2013-0323, pp. 7-8 (La.App. 4 Cir. 5/7/14), 144 So.3d 1083, 1087-1088,- set out the well settled standard for reviewing convictions for sufficiency of the evidence:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);[2] State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mus-sall, 523 So.2d at 1310. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction' is contrary to the weight of the | evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of *725 collateral facts and circumstances from which the existence of the main faqt may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d.372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded, La. R.S. 15:438. This, is not a separate test from Jackson v. Virginia, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty, beyond a reasonable doubt, State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable -doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987). If a rational, trier of fact reasonably rejects the defendant’s hypothesis of innocence, that hypothesis falls;- and, unless another one creates reasonable doubt, the defendant is guilty. State v. Captville, 448 So.2d 676 (La.1984).
“A factfinder’s credibility decision should not be. disturbed-unless it is clearly contrary to the evidence.” State v. McMillian, 2010-0812, p. 6 (La.App. 4 Cir. 5/18/11), 65 So.3d 801, 805 (citations omitted).

Illegal Use of a Weapon

Defendant was found guilty of La. R.S. 14:94(A), [illegal use of a firearm, which provides: “[ijillegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm ... where it is foreseeable that it may result in death or great bodily ham to a human being.”
Defendant claims that his conviction for illegal use of a firearm must be vacated because there was insufficient evidence to demonstrate (1) that he- possessed and used a firearm, or (2) that he endangered human life as described in the statute. However, a review of, the record indicates that -there was sufficient evidence for a reasonable jury to conclude that the defendant illegally used a Infirearm, and that it was foreseeable that such use could have resulted in death or great bodily harm to a human being.
Defendant, to. distinguish the facts underlying the case. sub judiae, cites State v. Matthews, 2010-1607 (La.App. 4 Cir. 6/15/11), 70 So.3d 116, where this Court affirmed a defendant’s conviction for illegal use of-a firearm. The facts in Matthews do deviate .in some key ways from-the facts here; however, this Court’s reasoning in that case actually highlights -the-sufficiency of the evidence considered by the trial court in the case at bar. See id.
In Matthews, an outdoor verbal' altercation between two men led 'tó the firing óf a gun (a fact that the defendant did not dispute) while the victim was standing outside, oh a landing at the rear of his house. Id., 2010-1507, p. 3, 70 So.3d at 118.- This Court, noting that the victim was thirty feet away from the defendant when he fired the gun in the Carrolton neighborhood, “a densely populated urban area,” proclaimed that “it is a matter of common knowledge that bullets tend to fall back to earth when fired in the air;!’ thus, “it is foreseeable that serious injury or death to a person will result from the defendant’s firing of a firearm if the defendant fires the- weapon in an urban area while people are outside, even if the defendant did not fire in-the direction of a person or-persons.” Id., 2010-1507, p. 8-11, 70 So.3d at 120-21; see also, State v. Dumaine, 534 So.2d 32, 34 (La.App 4 Cir.1988) (upholding the conviction of a defendant who fired his gun in a neighborhood, across a well-travelled highway and finding sufficient evidence that the defendant’s’'firing'could result in death or bodily injury); State v. Michel, 581 So.2d 404, 405 (La.App. 5 *726 Cir.1991) (finding that it was foreseeable that a human being may be seriously injured or killed when the defendant fired a weapon in a residential neighbor where children were playing).
This Court’s analysis in Matthews, contrary to defendant’s contentions on appeal, supports the jury’s finding that that the discharge of the gun could have fore-seeably resulted in death or great bodily harm. For one, the weapon was fired in a densely- populated urban neighborhood. Testimoiiy established that the victims were in the street walking from Pollard’s house ’ towards the defendant’s residence when the defendant pulled the weapon and started shooting. Pollard’s residence is cattycorner to the side -of defendant’s house on which the defendant was standing when he fired the weapon. For these reasons, this- Court’s proclamation in Matthews that, “bullets tend to fall back to earth when fired in the air,” would support the idea that it was foreseeable that death or great bodily injury, could have resulted from the discharging of defendant’s firearm. State v. Matthews, 2010-1507, p. 9 (La.App. 4 Cir. 6/15/11), 70 So.3d 116, 120.
Of course, the relevance of the foreseeability of injury hinges on whether there was sufficient evidence to establish that the defendant did, in fact, possess and use a firearm. Although neither Pollard nor Lewis distinctly remembers seeing a firearm[3], both victims testified that'they heard multiple gun shots after 'watching the defendant reach for and pull an object from his' hip or waistband. Lewis 18actually testified that he believed the object ’to be a black handgun, while both demonstrated confidence that the sounds they heard were gun shots, as opposed to a discharging paintball gun.[4] Additionally, the jury heard the 911 recording, wherein the caller reported that gun shots had been fired. While officers failed to locate any bullets or strike marks on the scene, three “fresh” .9 millimeter casings were found within feet of the defendant’s property, near where the victims’ testified defendant was standing when he fired the shots. It was determined by an expert in ballistics, firearms, and tool marks that all three casings were fired from the same weapon. Considering the above in con-, junction with the testimony from the investigating officers that the paintball gun defendant claims to have fired was found with no compressed air cartridge (presumably making it inoperable), as well as the fact that hone of the officers observed any paint splatter at the scene, it was reasonable for the jury to find that the defendant discharged a firearm.
Further and maybe most telling, are the four jailhouse telephone calls made by the defendant the day after his arrest. In one of- these calls, the defendant indicates that the gun he used in the confrontation with the Pollard and Lewis is hidden in a jacket in the back of his closet, and he directs the call recipient to contact his sister about retrieving the weapon.[5] This Court has found that evidence of concealment “indi *727 cates consciousness of guilt, and therefore is one of the circumstances from which a juror may infer guilt.” State v. Lewis, 2012-0803, p. 111 (La.App. 4 Cir. 9/25/13), 125 So.3d 1252, 1259 (quoting State v. Davies, 350 So.2d 586, 588 (La.1977)). The defendant argues repeatedly that the State failed to establish that defendant was the person who made the jail phone call is also unpersuasive. Given the testimony of the record’s custodian that inmates frequently use the folder numbers of other inmates[6], as well as the fact'that all four phone calls were made to the same number in close succession, it was reasonable for the jury to find that the defendant was the individual making these calls.
Accordingly, there was sufficient evidence for a reasonable jury to conclude that the defendant was guilty of did possess and use a firearm where it was foreseeable that use thereof could result in death or great bodily harm.

Possession óf a Firearm by a Convicted Felon

Defendant was found guilty of La. R.S. 14:95.1(A), [p]osession of a firearm or carrying concealed weapon by a person convicted of certain felonies, which provides in pertinent part that: “[i]t shall be unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony ... to possess a firearm or carry á concealed weapon.” To convict a defendant of possession of a firearm, the State must prove: (1) possession of a firearm; (2) conviction of an enumerated felony, (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. La. R.S. 14:95.1; State v. Husband, 437 So.2d 269, 271 (La.1983); State v. Ball, 99-0428, p. 3 (La.11/30/99), 756 So.2d 275, 276-277; State v. Fields, 2012-0674, p. 6 (La.App. 4 Cir. 6/19/13), 120 So.3d 309, 315; State v. Scott, 2013-0321, p. 8 (La. App. 4 Cir. 2/26/14), 136 So.3d 383, 389, writ denied, 2014-0427 (La.4/17/14), 138 So.3d 627.
Defendant only addresses in his brief the requirement that he must have possessed a firearm. This argument, however, has been addressed above with regard to defendant’s conviction for illegal discharge of a firearm. See supra pp. 725-27. Concerning the requirement that the defendant must have been convicted of a felony as enumerated in La. R.S. 14:2(B), the record demonstrates that the defendant was convicted of two counts of aggravated battery in December of 2010. Aggravated battery is a crime of violence defined in La. R.S. 14:2(B)(5), thereby satisfying the second and third elements of La. R.S. 14:95.1(A). Finally, as this Court has previously found, the very doing of acts that have been declared criminal shows general criminal intent necessary to sustain a conviction. State v. Smith, 98-0366, p. 7 (La.App. 4 Cir. 5/12/99), 744 So.2d 73, 77. Therefore, sufficient evidence exists to sustain the defendant’s conviction for possession of a firearm by a convicted felon.

Obstruction of Justice

Defendant was found guilty of La. R.S. 14:130.1, [ojbstruction of justice, which provides in pertinent part that:
■A. The crime of obstruction of justice is any of the following when committed with tfcie knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:
(1) Tampering with evidence with the specific intent of distorting the re- *728 suits of any criminal investigation Inor proceeding which may reason" ably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:
(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or U.S., law enforcement officers; or ... [Emphasis added].
As emphasized above, the knowledge requirement in La.R.S. 14:130.1(A) is met if the perpetrator merely knows-that an act “reasonably may”, affect a “potential” or “future” criminal proceeding. State v. Jones, 2007-1052, p. 9 (La.6/3/08), 983 So.2d 95, 101; State v. Tatum, 09-1004, p. 12 (La.App. 5 Cir. 5/25/10), 40 So.3d 1082, 1090. The defendant must also have tampered with evidence “with the specific intent of distorting the results” of a criminal investigation. See La. R.S. 14:130.1(A)(1). Nothing beyond ‘movement’ of the evidence is required by the statute ,if accompanied by the requisite intent and knowledge. Jones, 2007-1052, p. 10 (La.6/3/08), 983 So.2d at 101.
As the State .points out, the defendant’s conviction on this count was based on his removal of the weapon from the scene of the shooting — that is, the hiding of the weapon in a jacket in the back of his closet — and not, as; the defendant would have it, the jail house phone call insinuating that his sister retrieve the gun. A review of the. record indicates that the jury’s decision to convict the defendant on these grounds was not unreasonable.
Regarding the knowledge requirement of La. R.S. 14:130.1(A), the defendant had been previously convicted of the felony of aggravated battery. Jurisprudence indicates that a prior conviction, alone, is .sufficient to find that a I defendant had the knowledge required by the statute. See Jones, 2007-1052, p. 10, 983 So.2d at 101 (finding that the defendant had the requisite knowledge for obstruction of justice when the defendant was on a probation for a drug offense and possession of marijuana would be a violation of his probation). Moreover, the -investigation need not have .been underway at the .time of the obstruction for the statute to have been violated — 4.e., the obstruction must only be committed with the knowledge that the act -reasonably may affect “an actual or potential present, past, or future criminal proceeding.” See La. R.S. 14:130.1(emphasis added); Jones, 2007-1052, p. 9, 989, So.2d at 101. Further, defendant, by offering his paintball gun as an explanation for the allegations, explicitly demonstrated his intent to distort the officer’s investigation.
As our Supreme Court has noted, when accompanied by the, requisite knowledge and intent, all that is required to obstruct justice is ‘movement’ of evidence. Jones, 2007-1052, p. 10 (La.6/3/08), 983 So.2d at 101. The information provided on the jail house calls.provides a reasonable basis for the conclusion that the defendant moved the weapon from his possession and concealed it in his bedroom closet.[7]

CONCLUSION

The defendant’s convictions for illegal use of-a weapon, possession of a firearm by a convicted felon, and obstruction of justice are affirmed.
AFFIRMED.

. Once detained and transported to the police státion, Detective Jerry Devorak took the de *724 fendant’s statement by video recording. In the video, the defendant details the confrontation with the victims. In pertinent part, the defendant states that after an initial encounter with. Lewis, both victims approached his side yard, at which time he went inside and grabbed a paintball gun from his bedroom. Thereafter, defendant states, he returned outside with the paintball gun behind his back, and the victims asked him what was behind his back. At this point, according to defendant, he shot the paintball gun three times, and the victims turned to run before they could see the weapon.

. The Fourth Circuit in State v. Sparkman, 2008-0472, pp. 6-7 (La.App. 4 Cir. 1/28/09), 5 So.3d 891, 895, stated that the Jackson standard is legislatively embodied in La.C.Cr.P. art. 821(B) which provides that a "post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.”

.At. trial, both Pollard and Lewis testified that as they approached defendant’s residence, the defendant pulled what looked to be a gurí from his hip, and shot between two or three times. Because both victims turned to run upon seeing the defendant reach for the weapon at his .hip,, neither could verify the type of weapon used by the defendant.

. Lewis specifically testified that he knew what a paintball gun sounded like and was confident that the noises he heard were gun shots.

. Specifically, the defendant states, “I got the weapon and shit,” and instructs the individual to "get at” his little sister and tell her that "the shit” is in the last jacket'in the back of his closet.

. Three of the four total phone calls were made using the defendant’s identification number, while the fourth was made using the number of another inmate.

. See supra pp. 726-27.