872 So.2d 1049 (2004)
STATE of Louisiana
v.
Tony BURBANK.
No. 2002-K-1407.
Supreme Court of Louisiana.
April 23, 2004.
*1050 PER CURIAM:
Granted in part; denied in part. The decision of the Fourth Circuit is reversed in part and this case is remanded to the court of appeal for further proceedings.
The district court erred in restricting defense cross-examination of the state's principal witness, Cassandra Scott, with regard to whether she had "completed a plea agreement over a year ago to get one year and get out" of jail on her own pending criminal charges. Although the charges were eventually resolved by a not guilty verdict rendered in a bench trial in which Scott was represented by another attorney, the witness acknowledged at defendant's trial that she expected to plead guilty in her case set for the following morning. The witness also acknowledged that she had three prior felony convictions. However, the trial court sustained the state's objections to further cross-examination by the defense aimed at establishing that Scott faced a possible life sentence as a fourth offender if convicted in her own case, see La.R.S. 15:529.1(A)(1)(c)(i), and that the preliminary negotiations of a plea bargain, unilaterally recorded on a plea form by Scott's former attorney that was not adopted by either the state or the court, evidently concerned not only a one-year sentence but also an agreement by the state to forego charging Scott as an habitual offender.
Although the plea negotiations between Scott and the state were not finalized, it is settled that "[a] witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct." State v. Vale, 95-1230, p. 4 (La.1/26/96), 666 So.2d 1070, 1072; see also State v. Rankin, 465 So.2d 679, 681 (La. 1985)("The possibility that the prosecution may have leverage over a witness due to that witness'[s] pending criminal charges is recognized as a valid area of cross-examination."). Scott acknowledged that the state had continued trial in her case over 20 times, and had reset it again to coincide with defendant's trial, timing which may have raised a reasonable belief in the witness that some connection existed between her testimony against the defendant and resolution of her own charges. That the witness had spent over two years in jail awaiting trial would not have negated a reasonable expectation or belief based on the preliminary negotiations in her case that the court would, in effect, sentence her to time served in her own case in the event it imposed a sentence of one year imprisonment at hard labor after she testified against the defendant in the present case. By foreclosing cross-examination of Scott on her expectations for her own case, *1051 the trial court unduly "restricted the inquiry into the witness's motive and interest in testifying for the state and thereby frustrated an `important function of the constitutionally protected right of cross-examination.'" State v. Vale, 96-2953, p. 1 (La.9/19/97), 699 So.2d 876, 877 (quoting Vale, 95-0577 at 4, 666 So.2d at 1072).
The trial court erred further by precluding the defense from presenting extrinsic evidence of a prior inconsistent statement made by Scott to Eugene Jarrow that she had falsely accused the defendant of killing the victim. As a predicate for introducing extrinsic evidence of a witness's prior inconsistent statement, La. C.E. art. 613 requires only that the witness's attention first be "fairly directed... to the statement ... and the witness has been given the opportunity to admit the fact and has failed distinctly to do so." Scott answered defense counsel's question by denying she even knew Jarrow and thereby failed to admit distinctly that she had made the statement. In addition defense counsel expressly informed the court that he intended to call Jarrow for impeachment purposes and that the "jury has to make [the] decision" as to whether Scott made the statement. Counsel thereby made clear that he intended to introduce Jarrow's testimony not to vouch substantively for the truth of Scott's out-of-court statements but only to prove that they were made and "to establish the fact of contradiction as a means of impeaching [the] witness's general credibility." State v. Owunta, 99-1569, p. 1 (La.5/26/00), 761 So.2d 528, 529.
Confrontation errors are nevertheless subject to harmless-error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Because the court of appeal agreed with the rulings of the trial judge, the court did not address the issue of harmless error, and that issue did not prompt this Court's grant of certiorari. It is therefore appropriate to remand the case to the court of appeal to determine on the record whether the errors were harmless beyond a reasonable doubt and therefore did not contribute to the jury's verdict in the present case. See State v. Code, 627 So.2d 1373, 1384-85 (La.1993); State v. Gibson, 391 So.2d 421, 426 (La.1980). In all other respects, the application is denied.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, J., dissenting.
The court of appeal erred in finding that the trial court did not improperly curtail the cross-examination testimony of the State's star witness, Cassandra Scott. At the time of the defendant's trial, Scott was incarcerated on a drug-related charge and was facing a multiple bill as a fourth felony offender and a possible sentence of 20-years to life imprisonment. The defendant should have been afforded the opportunity to inform the jury of these charges against Scott, as well as the suspicious timing of various actions taken by the prosecution. State v. Brady, 381 So.2d 819 (La.1980). In my mind, this is not harmless error. Therefore, I would reverse the defendant's conviction and sentence and remand this case to the district court for a new trial.