STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 KA 0621

STATE OF LOUISIANA

VERSUS

PORTER MAJOR, JR.

Judgment Rendered: ____NOV 1 5 2019____

* * * * *

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 03-17-0923

Honorable Trudy M. White, Judge Presiding

* * * * *

Hillar C. Moore, III                                   Attorneys for Appellee,
District Attorney                                      State of Louisiana
Dylan C. Alge
Assistant District Attorney
Baton Rouge, Louisiana


Gail Horne Ray                                         Attorney for Defendant/Appellant,
Baton Rouge, Louisiana                                 Porter Major, Jr.


* * * * *

BEFORE:   HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

**PENZATO, J.**

The defendant, Porter Major, Jr., was charged by bill of information with possession of a firearm or carrying a concealed weapon by a person convicted of certain felonies[1] (count one), a violation of La. R.S. 14:95.1, and aggravated assault with a firearm (count two), a violation of La. R.S. 14:37.4. He pled not guilty. The defendant waived a trial by jury and was found guilty as charged on both counts after a bench trial. The trial court denied a motion for new trial filed by the defendant. On both counts, the trial court imposed five years imprisonment at hard labor, to be served concurrently. The defendant now appeals, arguing in two assignments of error that his constitutional right of confrontation was violated and that the evidence to support the convictions is insufficient. For the following reasons, we affirm the convictions and sentences.

## STATEMENT OF FACTS

On February 7, 2017, Lamonica Booker and her thirteen-year-old son, D.T.[2], encountered the defendant and Edward Rogers after entering Vince's Liquor Store in Baton Rouge. According to Booker's trial testimony, the defendant made offensive comments directed towards her as she was paying for her items.[3] Booker further testified that D.T. asked the defendant to please stop disrespecting his mother. After they exited the store, the defendant pulled a gun out of his right pocket. The defendant pointed the gun at Booker and D.T. as they were getting into Booker's vehicle. Concerned for the safety of D.T. and the other children who were in her car at the time, Booker drove around the block and circled back to

---

[1] As indicated in the record, the defendant was previously convicted of a felony enumerated in La. R.S. 14:95.1(A), illegal use of weapons or dangerous instrumentalities, in violation of La. R.S. 14:94.

[2] The thirteen-year-old victim will be identified by initials only in accordance with La. R.S. 46:1844(W)(1)(a), which allows the court to protect the identity of a crime victim who is a minor by using his or her initials.

[3] Booker testified that the defendant was making "nasty comments." When asked specifically what the defendant said, she replied, "He would stick his hand up my butt, and other lil -- you know -- stuff that he was saying towards me, basically talking under my clothes."

2

photograph the license plate of the vehicle occupied by the defendant. Booker then drove to the Baton Rouge Police Department and reported the incident.

## SUFFICIENCY OF THE EVIDENCE

In assignment of error number two, the defendant argues that the State failed to meet its burden of proof beyond a reasonable doubt that the defendant possessed a firearm as required for a conviction on both counts. The defendant argues that there was no evidence or testimony presented at trial that the instrument entered into evidence was in fact a firearm as defined by statute. The defendant notes that the two officers who testified at trial admitted that they did not examine the instrument. Thus, the defendant argues that the State did not prove that a firearm was involved in this case.

When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The sufficiency claim is reviewed first because the accused may be entitled to an acquittal under *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with La. Code Crim. P. art. 821 and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. When the entirety of the evidence, including inadmissible evidence that was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot. On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused

3

is entitled to a new trial. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992). If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. *Hearold*, 603 So.2d at 734; *State v. Martin*, 2017-1100 (La. App. 1st Cir. 2/27/18), 243 So.3d 56, 60, *writ denied*, 2018-0568 (La. 3/6/19), 266 So.3d 901.

When analyzing circumstantial evidence, La. R.S. 15:438 provides that the trier of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. *State v. Graham*, 2002-1492 (La. App. 1st Cir. 2/14/03), 845 So.2d 416, 420. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. *State v. Golden*, 2016-1659 (La. App. 1st Cir. 6/2/17), 223 So.3d 4, 10-11.

The elements of possession of a firearm by a convicted felon are: (1) possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. La. R.S. 14:95.1(A); *State v. Bias*, 2014-1588 (La. App. 1st Cir. 4/24/15), 167 So.3d 1012, 1019, *writ denied*, 2015-1051 (La. 5/13/16), 191 So.3d 1053; *State v. Morris*, 99-3075 (La. App. 1st Cir. 11/3/00), 770 So.2d 908, 918, *writ denied*, 2000-3293 (La. 10/12/01), 799 So.2d 496, *cert. denied*, 535 U.S. 934, 122 S.Ct. 1311, 152 L.Ed.2d 220 (2002).[4] According to La. R.S. 14:95.1(D), "firearm" means any pistol, revolver, rifle, shotgun, machine gun, submachine gun, black powder weapon, or assault rifle which is designed to fire or is capable of

---

[4] In this case, the defendant does not dispute having been convicted of an enumerated felony prior to the instant offenses within the ten-year statutory period of limitation.

4

firing fixed cartridge ammunition or from which a shot or projectile is discharged by an explosive.

Louisiana Revised Statutes 14:37.4 provides that aggravated assault with a firearm is an assault committed with a firearm. According to La. R.S. 14:37.4(B), "firearm" is defined as an instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it. Further, an assault is defined as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. 14:36. A battery is, in part, the intentional use of force or violence upon the person of another. La. R.S. 14:33. A conviction of assault requires proof beyond a reasonable doubt of: (1) the intent-to-scare mental element (general intent); (2) conduct by defendant of the sort to arouse a reasonable apprehension of bodily harm; and (3) the resulting apprehension on the part of the victim. *State v. Gardner*, 2016-0192 (La. App. 1st Cir. 9/19/16), 204 So.3d 265, 267-68.

General intent exists when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10. To establish the general criminal intent for an aggravated assault, jurisprudence holds that the act of pointing a weapon at another person and threatening bodily harm is sufficient to establish the element of intent. Whether the gun at issue is operable is not determinative. So long as the weapon was used by the defendant in such a way as to excite fear and apprehension in the victims, it is considered a dangerous weapon under the law. *State in Interest of C.B.*, 52,245 (La. App. 2d Cir. 6/27/18), 251 So.3d 562, 568-69. *See also State v. Jones*, 2018-0973, p. 13 (La. App. 4th Cir. 2/27/19), ___ So. 3d ___, 2019 WL 959790, at * 6 (holding evidence sufficient to convict defendant of aggravated assault with a firearm despite defendant claiming he used a water gun during the incident and the

5

gun was never recovered); *State v. Hill*, 47,568 (La. App. 2d Cir. 9/26/12), 106 So.3d 617, 624 (finding aiming a pistol at victim and verbally threatening harm was sufficient proof to sustain aggravated assault conviction); *State ex rel. W.H.*, 2010-1418 (La. App. 4th Cir. 4/6/11), 62 So.3d 839, 845 (concluding that a toy gun or an inoperable gun would satisfy the elements of aggravated assault with a firearm). Further, convictions of possession of a firearm by a convicted felon have been upheld where defendant claimed on appeal that he did not possess a real gun, but the testimony presented at trial supported the conclusion by the trier-of-fact that the defendant possessed an actual firearm. *State v. Powell*, 2015-0218 (La. App. 4th Cir. 10/28/15), 179 So.3d 721, 726-27, *writ denied*, 2015-2166 (La. 11/7/16), 208 So.3d 897; *State v. Hamdan*, 2013-0113 (La. App. 4th Cir. 12/11/13), 131 So.3d 197, 204, *writ denied*, 2014-0051 (La. 6/13/14), 140 So.3d 1188.

Booker testified at trial that after she and D.T. exited the store, she told the defendant that she was not going to let him shoot her thirteen-year-old son. When the defendant threatened to start a fight, Booker further told him, "We can fight but you got a whole gun pointed at us. So I'm not about to try to engage with nobody with a firearm weapon." When asked if she saw the gun, she confirmed that she did, adding that all of the children saw the gun as well. Booker further testified that she was able to get a good look at the gun and identified the object in evidence as the gun possessed by the defendant. At trial, and prior to trial when she spoke to the police, Booker described the gun as "a small, black, faded gun."

Corporal Jace Ducote of the Baton Rouge Police Department (BRPD) confirmed that Booker and D.T. gave consistent descriptions of the incident when they arrived at the police station on the day in question. In addition to providing a description of the defendant, Booker provided the photograph of the vehicle's license plate. Corporal John Passman of the BRPD ran the license plate number

and obtained Rogers's address, where he was able to locate both the defendant and Rogers, who were in the vehicle outside of the complex. Rogers was in the driver's seat while the defendant was occupying the front passenger seat. Corporal Passman advised Rogers and the defendant of their *Miranda*[5] rights and his reason for being there, indicating that, "someone had pulled a gun out on somebody at Vince's Liquor Store." At that point, both the defendant and Rogers denied being at the liquor store. Corporal Passman asked Rogers and the defendant if any weapons were in the vehicle and both replied negatively. After Rogers consented to a search of the vehicle, Corporal Passman recovered the gun from under the front passenger seat.[6] Both officers identified the item in evidence as the gun seized in this case.

Corporal Passman further testified that after he recovered the gun, the defendant then admitted to having the gun, being at Vince's Liquor Store, and seeing a female there, whom he described as "fine." According to Corporal Passman, the defendant stated that the male subject, who was with the female, began cursing and screaming at him because he did not like how he was talking to the female. Corporal Passman said the defendant admitted to threatening to shoot the male subject as the male subject continued to yell and curse at him after they exited the store, but he denied pulling a gun out.

Rogers testified at trial and confirmed being at the store with the defendant at the time of the incident. He stated that when the defendant repeatedly mumbled comments to "the woman," her son stated, "If you say that again, old man, imma come back there and slide you." Rogers stated that he did not know what happened after the defendant, Booker, and D.T. exited the store, as he was still in

---

[5] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

[6] Corporal Passman testified that after Rogers consented to the search of the vehicle, Rogers indicated that if a gun was in the vehicle, it did not belong to him. Corporal Passman searched the driver's side first, where he did not find anything, before recovering the gun from the passenger's side.

7

the store paying for his items. After Rogers exited the store, he told the defendant, "let's go," and they drove off. Twenty minutes later, the police arrived at his apartment complex. Rogers stated that he was not aware of the defendant having a gun but admitted he was present when the police found the gun in his vehicle. The defendant also testified at trial, again admitting to being at the scene and having the confrontation with Booker and D.T., but he denied having a gun or pulling out a gun. The defendant further denied that a gun was recovered from Rogers's vehicle and denied that the gun in evidence belonged to him.[7]

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. *State v. Duhon*, 2018-0593 (La. App. 1st Cir. 12/28/18), 270 So.3d 597, 619, *writ denied*, 2019-0124 (La. 5/28/19), 273 So.3d 315. Unless there is internal contradiction or irreconcilable conflict with the physical evidence, the testimony of a single witness, if believed by the fact finder, is sufficient to support a factual conclusion. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. *Duhon*, 270 So.3d at 619.

During closing arguments, the defendant argued that the gun in evidence was not proven to be a real firearm, and the trial court rejected that argument. In reviewing the evidence, we cannot say that the judge's determination was irrational under the facts and circumstances presented. *State v. Ordodi*, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662. Booker testified that the defendant had a gun, not a toy or imitation gun, and that he used the gun to threaten and frighten her and D.T.

---

[7] The defendant testified that he was on oxycodone, morphine, and "a bunch of other pills" at the time of the offense and at the time of the trial. He admitted that his medications affected his ability to perceive and remember things, but added, "Well I know I didn't have a gun. I know I didn't pull out a gun on nobody. I know that." The defendant does not raise his state of mind as an issue on appeal.

Further, the police testified that a gun, not a toy or imitation gun, was recovered from under the passenger seat of Rogers's vehicle. Finally, Booker identified the gun in evidence as the one used by the defendant at the time of the offenses.

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the trier of fact. *State v. Calloway*, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). Viewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant, a convicted felon, possessed a firearm and committed aggravated assault with that firearm. For the above reasons, this assignment of error is without merit.

## RIGHT OF CONFRONTATION

In assignment of error number one, the defendant argues that his constitutional right of confrontation was denied because the victim, D.T., was not called to the stand to testify. The defendant notes that the State made no argument that the victim was unavailable as defined by La. Code Evid. art. 804. The defendant notes that he has never had the opportunity to cross-examine the victim. Thus, the defendant argues that the conviction on count two should be reversed.

The Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 16 of the Louisiana Constitution guarantee a criminal defendant the meaningful opportunity to present a complete defense. *State v. Dressner*, 2008-1366 (La. 7/6/10), 45 So.3d 127, 137, *cert. denied*, 2010-752 (La. 3/7/11), 131 S.Ct. 1605. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The confrontation clause bars "admission of

9

testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004).

Confrontation errors are subject to the harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986); *State v. Burbank*, 2002-1407 (La. 4/23/04), 872 So.2d 1049, 1051 (per curiam). The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination was fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438. Factors to be considered by the reviewing court include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Van Arsdall*, 475 U.S. at 684, 106 S.Ct at 1438; *State v. Wille*, 559 So.2d 1321, 1332 (La. 1990). The verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial is surely unattributable to the error. *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); *State v. Broadway*, 96-2659 (La. 10/19/99), 753 So.2d 801, 817, *cert. denied*, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000).

The evidence presented at trial compels a finding that the guilty verdict is surely unattributable to the error, if any, as a result of the defendant's inability to cross-examine D.T., the thirteen-year-old victim, in this case. Considering the eyewitness testimony presented by Booker, the victim's mother, the police, Rogers, and the defendant, D.T.'s testimony was not necessary to prove the elements of the offenses in this case. Therefore, we conclude that the guilty

10

verdicts rendered in this particular case are surely unattributable to any confrontation error. *See State v. Buckenberger*, 2007-1422 (La. App. 1st Cir. 2/8/08), 984 So.2d 751, 759-60, *writ denied*, 2008-0877 (La. 11/21/08), 996 So.2d 1104. Therefore, assignment of error number one lacks merit.

## REVIEW FOR ERROR

We note that our review for error is pursuant to La. Code Crim. P. art. 920, which provides that the only matters to be considered on appeal are errors designated in the assignment of errors and an "error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La. Code Crim. P. art. 920(2). Our review has revealed the existence of two patent sentencing errors in this case.

In sentencing the defendant on count one, possession of a firearm or carrying a concealed weapon by a person convicted of certain felonies, the trial court failed to impose the mandatory fine of not less than one thousand dollars nor more than five thousand dollars.[8] *See* La. R.S. 14:95.1(B). An illegal sentence may be corrected at any time by the court that imposed the sentence, or by an appellate court on review. La. Code Crim. P. art. 882(A). While the sentence imposed on count one is in error under La. Code Crim. P. art. 920(2), it certainly is not inherently prejudicial, but in the defendant's favor. We further note that the sentencing error was not raised by the State in either the trial court or on appeal. As such, we decline to correct the illegally lenient sentence. *See State v. Price*, 2005-2514 (La. App. 1st Cir. 12/28/06), 952 So.2d 112, 123-25 (en banc), *writ denied*, 2007-0130 (La. 2/22/08), 976 So.2d 1277.

---

[8] When imposing the sentence on count one, the trial judge did not state that the sentence would be served without the benefit of parole, as statutorily required. *See* La. R.S. 14:95.1(B). Nonetheless, as *State v. Williams*, 2000-1725 (La. 11/28/01), 800 So.2d 790, 799, and La. R.S. 15:301.1(A) provide, any applicable "without benefits" provision is self-activating.

11

Moreover, while it appears that the counseled motion for new trial, filed on September 6, 2018, was denied before the date of sentencing, the pro se motion for new trial, filed on January 11, 2019, was denied at the sentencing hearing on January 15, 2019, immediately before the sentences were imposed.[9] Louisiana Code of Criminal Procedure article 873 mandates, in relevant part, that a sentence shall not be imposed until at least twenty-four hours after a motion for new trial is overruled. Accordingly, the trial court erred by sentencing the defendant immediately after ruling on the pro se motion for new trial.

Nevertheless, in *State v. Augustine*, 555 So.2d 1331, 1333-34 (La. 1990), the Louisiana Supreme Court indicated that a failure to observe the twenty-four hour delay provided in La. Code of Crim. Proc. art. 873 will be considered harmless error where a defendant could not show that he suffered prejudice from the violation. *See State v. White*, 404 So.2d 1202, 1204-05 (La. 1981). In *Augustine*, the Louisiana Supreme Court concluded that prejudice would not be found if a defendant had not challenged the sentence imposed and the violation of the twenty-four hour delay was merely noted on patent error review. *Augustine*, 555 So.2d at 1334. In the instant case, the defendant has not assigned error to the trial court's failure to observe the twenty-four hour delay prior to sentencing, nor has he contested the sentences imposed. Accordingly, any error in the trial court's failure to observe the twenty-four hour delay is harmless beyond a reasonable doubt and

_____

[9] Prior to the imposition of the sentences, the defendant's pro se motion for new trial, filed four days before the sentencing hearing, was brought to the attention of the trial judge by defense counsel. The State noted that the defense counsel had already filed a motion for new trial and that the motion was denied, after argument, on November 14, 2018. The trial court agreed, further noting that sentencing had been set on at least three occasions. According to the minutes, on motion of the defense counsel, the sentencing was continued on three dates, September 6, 2018, October 30, 2018, and November 14, 2018. While the minutes do not reflect a ruling on the counseled motion for new trial, the abovementioned claims by the State and trial court at sentencing were not refuted by the defendant or his counsel who filed the motion. Both the counseled and pro se motions for new trial argued that the verdict is contrary to the law and the evidence and that the ends of justice would be served by the granting of a new trial. The counseled motion further raised the confrontation claim asserted on appeal and in a motion for a judgment of acquittal, denied by the trial court prior to the verdicts.

does not require a remand for resentencing. *See State v. Magee*, 2017-1217 (La. App. 1st Cir. 2/27/18), 243 So.3d 151, 165, *writ denied*, 2018-0509 (La. 2/11/19), 263 So.3d 434.

**CONVICTIONS AND SENTENCES AFFIRMED.**